NOS. 20-2943 & 20-2944

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

JERRY ZWEITZIG,
Appellant

APPEAL FROM JUDGMENT OF CONVICTION AND SENTENCE
IN CRIMINAL NOS. 19-00311-1 & 20-00153-1 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

ERIC L. GIBSON
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8506

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .................................................................1

    I.    Subject Matter Jurisdiction .........................................................1

    II.    Appellate Jurisdiction .................................................................1

STATEMENT OF ISSUES ............................................................................ 2

STATEMENT OF THE CASE ....................................................................... 3

    I.    Procedural History ...................................................................... 3

    II.    Statement of Facts ...................................................................... 5

        A.    The Offense Conduct .................................................... 5

        B.    Sentencing ....................................................................15

STATEMENT OF RELATED CASES ........................................................ 29

SUMMARY OF ARGUMENT ................................................................... 30

ARGUMENT...............................................................................................31

    THE SENTENCE IMPOSED BY THE DISTRICT
    COURT WAS PROCEDURALLY AND
    SUBSTANTIVELY REASONABLE......................................................31

        A.    The Sentence Was Procedurally
            Reasonable ................................................................... 32

            1.    The claim is reviewed for
                plain error ............................................................. 32

            2.    The district court did not err ................................. 36

B.    The Sentence Was Substantively
Reasonable ........................................................................ 42

CONCLUSION............................................................................................ 49

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States,*
    552 U.S. 38 (2007)................................................................31

*Johnson v. United States,*
    520 U.S. 461 (1997)............................................................. 42

*Molina-Martinez v. United States,*
    136 S. Ct. 1338 (2016) ....................................................... 39

*New York v. Ferber,*
    458 U.S. 747 (1982)............................................................. 45

*Rita v. United States,*
    551 U.S. 338 (2007) .................................................36, 37, 47

*Sealed Appellee v. Sealed Appellant,*
    825 F.3d 247 (5th Cir 2016)................................................41

*United States v. Arsenault,*
    833 F.3d 24 (1st Cir. 2016)..................................................41

*United States v. Astling,*
    733 F.2d 1446 (11th Cir. 1984) ......................................... 34

*United States v. Brown,*
    330 F.3d 1073 (8th Cir. 2003) ...........................................41

*United States v. Bungar,*
    478 F.3d 540 (3d Cir. 2007) .............................................. 42

*United States v. Carey,*
    589 F.3d 187 (5th Cir. 2009) ..............................................41

*United States v. Cerno,*
    529 F.3d 926 (10th Cir. 2008) ...........................................41

*United States v. Cooper,*
    437 F.3d 324 (3d Cir. 2006) ........................................................31, 32

*United States v. Davenport,*
    910 F.3d 1076 (8th Cir. 2018) ...........................................................40

*United States v. Flores-Mejia,*
    759 F.3d 253 (3d Cir. 2014) ................................................... 31, 33-35

*United States v. Goodale,*
    738 F.3d 917 (8th Cir. 2013) ..............................................................41

*United States v. Hood,*
    143 F. App'x 94 (10th Cir. 2005)........................................................41

*United States v. Iglesias,*
    535 F.3d 150 (3d Cir. 2008)...............................................................40

*United States v. Jansen,*
    431 F. App'x 51 (2d Cir. 2011) ...........................................................41

*United States v. Jass,*
    331 F. App'x 850 (2d Cir. 2009) ........................................................41

*United States v. Lacerda,*
    958 F.3d 196 (3d Cir. 2020)........................................................ 40, 47

*United States v. Lessner,*
    498 F.3d 185 (3d Cir. 2007)............................................................. 42

*United States v. MacEwan,*
    445 F.3d 237 (3d Cir. 2006) ............................................................ 45

*United States v. Mazer,*
    604 F. App'x 126 (3d Cir. 2015) ........................................................40

*United States v. Pavulak,*
    700 F.3d 651 (3d Cir. 2012) ..............................................................40

*United States v. Pawlowski,*
    967 F.3d 327 (3d Cir. 2020) ............................................................ 47

*United States v. Puente,*
    267 F. App'x 863 (11th Cir. 2008) ................................................... 41

*United States v. Resnick,*
    823 F.3d 888 (7th Cir. 2016) ............................................................ 41

*United States v. Scott,*
    985 F.2d 576 (9th Cir. 1993) ............................................................ 41

*United States v. Stull,*
    760 F. App'x 109 (3d Cir. 2019) ..................................................... 40

*United States v. Tomko,*
    562 F.3d 558 (3d Cir. 2009) ............................................................ 31

*United States v. Vargas,*
    477 F.3d 94 (3d Cir. 2007) .............................................................. 40

*United States v. Walpole,*
    543 F. App'x 224 (3d Cir. 2013) ..................................................... 40

*United States v. Williams,*
    553 U.S. 285 (2008) ......................................................................... 43

*United States v. Zhinin,*
    815 F. App'x 638 (3d Cir. 2020) ..................................................... 40

## Statutes and Rules

18 U.S.C. § 2251 ................................................................................. 3, 45

18 U.S.C. § 2252(a)(4)(B) ...................................................................... 3

18 U.S.C. § 3231 .......................................................................................1

18 U.S.C. § 3553(a) ............................................................................... 30

18 U.S.C. § 3742.................................................................................1

28 U.S.C. § 1291..................................................................................1

Fed. R. Crim. P. 51(b) ................................................................ 34, 35

Fed. R. Crim. P. 52(b) ..................................................................... 34

# JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

Because the defendant was charged in an indictment with violations of federal criminal law, the district court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231.

## II. Appellate Jurisdiction

Based upon the timely filing of a notice of appeal from the order of judgment in a criminal case entered on September 23, 2020, this Court has jurisdiction over this matter under 28 U.S.C. § 1291. In addition, this Court has jurisdiction pursuant to 18 U.S.C. § 3742 to review the sentence imposed on the defendant.

## STATEMENT OF ISSUES

1. Did the district court commit plain error in its sentencing explanation?

2. Where the defendant's sentencing guideline range in this case called for life imprisonment, was the statutory maximum sentence imposed by the district court substantively reasonable?

## STATEMENT OF THE CASE

### I. Procedural History

In Crim. No. 19-CR-00311, on May 30, 2019, a grand jury in the Eastern District of Pennsylvania returned an indictment of Jerry Zweitzig charging him in Counts One through Five with manufacture and attempted manufacture of child pornography, in violation of 18 U.S.C. § 2251(a) and (e); and in Count Six with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2), arising from the defendant's sexual exploitation of Minor #1, a family member, over a period of years, his photographing and videotaping of his sexual abuse of this child, and his extensive collection of child pornography of thousands of additional children that he downloaded from the Internet. On October 28, 2019, the defendant entered an open guilty plea to all charges in the Indictment.

In preparing for Zweitzig's sentencing, the prosecution team identified video in defendant's child pornography collection of Minor #2, an infant male and Minor #1's youngest sibling. Defendant Zweitzig was subsequently charged again on April 3, 2020, in an Information in Crim. No. 20-CR-00153 with an additional count of manufacturing and attempted manufacturing of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), arising from the defendant's sexual exploitation of Minor

#2 and his videotaping of his sexual abuse of the infant. On May 18, 2020, the defendant entered an open guilty plea to the Information. Both cases were consolidated for sentencing.

Sentencing took place on September 17, 2020. The statutory maximum per count for Counts One through Five in Case No, 19-CR-00311 and Count One in Case No. 20-CR-00153 is 30 years' incarceration with a 15-year mandatory minimum term. Because the images in the defendant's collection depict children under the age of 12 years, the statutory maximum for Count Six in Case No. 19-CR-00311 is elevated to 20 years' incarceration. Thus, the total statutory maximum penalty defendant faced was 200 years' incarceration.

After correctly determining that the defendant's sentencing guideline range in this case recommended life imprisonment, the district court imposed the statutory maximum sentence on all counts to run consecutively for a total sentence of 200 years' incarceration, lifetime supervised release, and mandatory restitution in the amount of $41,992.60, and a special assessment of $700. Zweitzig filed a timely appeal challenging his sentence, which he is currently serving.

## II. Statement of Facts

### A.    The Offense Conduct.

The facts are not in dispute. On March 6, 2018, the Horsham Township Police Department received a phone call regarding allegations of sexual abuse made by Minor #1 that had taken place over a period of years. The child had first reported some abuse by a close family member in 2014, and had gone to the local authorities, but no charges were filed. According to the investigation at that time, the abusive activity ended in 2014 after the allegations were initially examined and the family of Minor #1 relocated. On March 5, 2018, Minor #1 reported that the abuse was much more extensive than had previously been disclosed. According to Minor #1, Jerry Zweitzig would frequently expose his penis during episodes of abuse. Minor #1 also disclosed that Zweitzig would use Minor #1's hands to masturbate him on several occasions. Minor #1 also reported that the defendant told Minor #1 that he would teach Minor #1 sex acts so that Minor #1 would be prepared for adulthood and romantic relationships. According to Minor #1, the defendant took pictures of the abuse on multiple occasions. App. 38; PSR ¶ 9-11.[1]

---

[1] The abuse took place while Zweitzig served as the pastor of the nondenominational Horsham Bible Church; he retired from that position in 2016.

### Zweitzig's Collection of 10,000 Images of Child Pornography

On April 5, 2018, Horsham detectives served a search warrant at the defendant's Hatboro residence. As a result of the warrant, detectives recovered multiple hard drives, computers, flash drives, and other electronic equipment. Among the evidence that was seized during the search warrant, four hard drives were recovered, three from laptops and one from a desktop computer. All were forensically imaged. App. 38-39; PSR ¶ 12.

The electronic devices contained over 10,000 pictures and videos of child pornography.[2] Among the thousands of pictures are images of underage children engaging in sexual acts with other children, adults, and animals.[3] *Id.* Zweitzig's collection includes an image that was found on the hard drive of Zweitzig's laptop. App. 39; PSR ¶ 13. This is an image of a white, prepubescent child posing nude on a beach. The child appears to be between the ages of 9 and 11 years old. The image bears the photo prefix

---

[2] Even the initial disclosure of Minor #1 in 2014 resulting in Zweitzig's false denial to local police in no way deterred Zweitzig's criminal activities. To the contrary, Zweitzig became emboldened in his pursuit of child pornography and amassed in excess of 7,500 images after Minor #1 reported his abusive behavior to local police. App. 38, 124; PSR ¶ 13 n.1.

[3] Zweitzig's collection of child pornography is the basis for Count Six of Indictment No. 19-CR-00311.

"imgSrc.ru" from a Russian image-sharing website. ImgSrc.ru has been identified by law enforcement as a popular site for trading child pornography. *Id.*

On December 12, 2018, Zweitzig was arrested by the Horsham Police Department on state charges alleging sexual abuse of children (child pornography), unlawful contact with a minor, indecent assault, corruption of minors, indecent exposure, and invasion of privacy. PSR ¶ 14. The investigation revealed that Zweitzig collected and stored child pornography across multiple electronic and storage devices. PSR ¶ 15. The Horsham Police Department investigators also requested assistance from their federal colleagues at Homeland Security Investigations (HSI) Philadelphia.

### Zweitzig's Images of Prepubescent Minor #1 At Less Than 12 Years Old

On April 9, 2019, HSI identified three images and two videos involving Minor #1 from Jerry Zweitzig's collection of child pornography. App. 39; PSR ¶ 15. The still images depict Minor #1 in the nude, and are charged in Crim. No. 19-CR-00311 as Counts One through Three. Minor #1's description of the episode during which these images were likely created and the date and time stamps captured on all three images are consistent with these images being taken by Jerry Zweitzig during a

"modeling" session intended to arouse Jerry Zweitzig and be preserved by him for that purpose. *Id.*

In the image captured in Count One, Minor #1 was 9 years old. Minor #1's genitals are essentially at the center of the image and appear to be the focus, particularly since Minor #1 is facing slightly away from the camera lens, although the child's body is oriented directly to the camera. App. 40; PSR ¶ 16. Minor #1 is standing on a bed in disarray in a bedroom, a place generally associated with sexual activity. In the image, the child is unnaturally stiff, and is completely nude. *Id.* The image captured in Count Two, also taken at age 9, depicts a close-up image of Minor #1's genitals. App. 40; PSR ¶ 17. The image captured in Count Three, at age 9, is also a close-up image of Minor #1's genitals, but the child is depicted manually manipulating the genitalia. App. 40; PSR ¶ 18. There is nothing age appropriate about these images taken by Zweitzig. All of the facts and circumstances under which the pictures were taken underscore that the images were intended to elicit a sexual response. App. 40. Moreover, in Minor #1's account of the event, the child described Zweitzig's attention and focus on Minor #1's genitals and his physical manipulation of the child's legs, which he spread apart, during the session. *Id.* The same

bedsheets and a pair of child's underwear are also depicted in all three images. *Id.*

File Name 2013.10.12 B_2 AVI from Zweitzig's collection, charged as Count Four of Indictment No. 19-CR-00311, is a video of defendant Zweitzig and Minor #1 depicting them in a bedroom. App. 40-41; PSR ¶ 19. The file name of the video places the date as October 12, 2013, and the video is 4 minutes and 27 seconds in length. *Id.* Minor #1 was 10 years old at the time. The defendant is naked and Minor #1 is clothed. Minor #1 is laying on the bed and the defendant stretched Minor #1's legs in multiple directions. *Id.* Eventually, Zweitzig instructed Minor #1 to "exercise his penis," and Minor #1 complied by placing a hand on the defendant's erect penis manually stimulating Zweitzig. *Id.*

**Zweitzig Recorded the Grooming of Minor #1 for Sexual Acts**

During the forensic examination of Jerry Zweitzig's electronic devices recovered in the search, investigators found another video involving Minor #1 addressed in the Indictment as Count Five. App. 41; PSR ¶ 20. Specifically, the defendant had stored the video on one of his flash drives. This video has a file name of DSCN1383_2 AVI and is 13 minutes and 6 seconds in length. *Id.* The video depicts Jerry Zweitzig's bedroom, and he and 10-year-old Minor #1 are seated on the bed. App. 41; PSR ¶ 20-21. In

the video, the defendant stated that he was going to miss Minor #1. *Id*. The defendant told Minor #1 that Minor #1 could tell him "anything," and ask him any questions, and that Minor #1 can show him anything "without having to be afraid, without having to be ashamed and without being embarrassed." The defendant claimed that he "will never do anything to hurt [Minor #1], will never force [Minor #1] to do anything [Minor #1 does not] want to do" and "[Zweitzig] will never tell anyone else what [Minor #1 does with him]." Zweitzig admitted on the video to taking pictures of Minor #1 at age 9 and indicated that he wanted to take more pictures. On the video, Zweitzig told Minor #1 that when they are alone, Minor #1 could take a look at his penis any time Minor #1 wants, "touch his penis, play with his penis and suck on his penis like a lollipop." Nevertheless, the defendant warned Minor #1 not to talk to anyone about what Minor #1 does to Zweitzig's "privates." The conversation continued between the two, and Zweitzig stated that Minor #1 "will soon get a [significant other] but [underage significant others] don't know what they are doing." The defendant repeated that Minor #1 "is safe with him" because he "will never do anything to hurt [Minor #1]." According to the defendant on the video, "I know what I'm doing, I'll never force you to do anything you don't want to do and I'll never tell anyone else about what you do." At approximately 8

minutes and 45 seconds into the video, Zweitzig removed his pants and underwear and talked to Minor #1 about "exercising" his penis. The video continued, and Zweitzig started to masturbate in front of Minor #1. Minor #1 appeared to be upset and crossed in front of the camera and exited the bedroom. App. 41-42; PSR ¶¶ 20-21.

This video does not display a date or time stamp, but investigators determined that it was made on or about January 28, 2014. PSR ¶ 22. On January 28th, while Minor #1's parents were dealing with the family's impending move out of Pennsylvania, Minor #1 was at Zweitzig's home when the child locked the bathroom door to get away from Zweitzig. App. 42; PSR ¶ 22. Minor #1 called the child's mother who was out of state at the time with a cell phone. Minor #1 said over the phone that the child could not put up with Zweitzig anymore. *Id*. Minor #1 also called the child's father who was at the family's Pennsylvania home in another town arranging for the move. Minor #1's parents arranged for an uncle to retrieve Minor #1 and the child's siblings from Jerry Zweitzig's home. Two days later, on January 30, 2014, Minor #1's father contacted the local police to make their first report, and their Pennsylvania home was emptied by movers in anticipation of relocating to another state. Minor #1 never set foot in Zweitzig's home again. *Id*.

## Minor #1

Minor #1 told investigators that Zweitzig's abuse persisted for years. Minor #1 said that Zweitzig told Minor #1 that he kept two categories of pictures of Minor #1. App. 43; PSR ¶ 23. The first category was "silly." The second category was "sexy." *Id.* He displayed the photographs for Minor #1 on his desktop computer. Minor #1 described incidents like those captured in the images and videos referenced above where Zweitzig took pictures of Minor #1 in various states of dress or undress, directed Minor #1 to pose in various ways, and reported that Zweitzig was frequently naked himself during these sessions. Minor #1 identified images of Minor #1 from several electronic files obtained from Zweitzig's electronic devices. App. 43; PSR ¶ 23.

## Zweitzig's Journal

During the course of Zweitzig's grooming of Minor #1, the defendant kept a journal. App. 43-44; PSR ¶ 24. After Minor #1's family relocated, the defendant mailed some of the pages from the journal to Minor #1. *Id.* In the cover letter accompanying the journal pages, the defendant wrote Minor #1 that Minor #1 could read additional pages after Minor #1 turned 18. Investigators obtained the portions of that journal authored by Zweitzig sent to Minor #1. The defendant wrote to his victim, "Some people seem to

think I lose focus of anything but you when I am with you. Can you imagine that?" PSR ¶ 24. In the pages that were mailed to Minor #1, Minor #1 found particularly disturbing references by Zweitzig about his observations regarding a friend of Minor #1's from "the [school] bus stop" having "reached puberty." When investigators obtained the journal pages, Minor #1's family also shared a letter written by the defendant in 2016 in which he attempted to explain away three specific instances where he was caught in inappropriate circumstances with Minor #1 in a bathroom and/or discussing puberty with Minor #1 while the family resided closer to Hatboro. App. 43-44; PSR ¶ 25.

### Jerry Zweitzig's Interview

On April 4, 2018, Horsham detectives interviewed the defendant at the time his residence was searched. App. 44; PSR ¶ 26. Zweitzig agreed to a non-custodial interview at the Horsham Police Station. He denied the allegations, but acknowledged discussing puberty with Minor #1. He told authorities that he had pictures of Minor #1, but denied that any of them involved any kind of sexual or prurient behavior. He blamed a relative of Minor #1's for the allegations made by Minor #1, claiming that the relative suffered some unspecified mental health and addiction issues. He

specifically denied showing his penis to Minor #1. At the conclusion of the interview, he left the police station. *Id.*

## Zweitzig's Jail Calls

Investigators obtained recordings of his jail calls while he was detained pending state charges for various child exploitation offenses. App. 44; PSR ¶ 27. In summary, the defendant participated in conversations with a family member in which he was confronted with the existence of the images and videos involving Minor #1. Having previously denied that anything like the images of Minor #1 described above even existed, on the recording, Jerry Zweitzig is reduced to telling his family member that he did not believe what he was doing was illegal or a crime because he intended for the images of Minor #1 to remain "private." *Id.*

## Minor #2

In preparing for Zweitzig's sentencing, the prosecution team identified video of an infant male that resembled Minor #1's youngest sibling, Minor #2. App. 45; PSR ¶ 28. This video has the file name of "DSCN 2442.avi" and is a video of Minor #2, under 6 months of age at the time, lying on light tan carpet and wearing a green and white onesie. During the video, a male's penis – later determined to be Zweitzig's - comes into view of the camera and is inserted into the infant's mouth. With

audible coaxing from defendant Zweitzig, Minor #2 starts to suck on the penis, and Zweitzig's voice is heard reassuring the baby "that's a good boy" repeatedly. *Id.* The video file has a creation date of "2010-09-08" and was produced by a Nikon camera. *Id.*

On February 18, 2020, the prosecution team met with the parents of Minor #2 to review a still image made from the video. App. 45; PSR ¶ 29. Minor #2's parents identified the infant depicted in the video to be their child. Minor #2's parents also reported that Zweitzig would come to their house to babysit immediately after the birth of infant Minor #2. Occasionally, Zweitzig would spend the night while visiting. *Id.*

## B.    Sentencing.

The Probation Office correctly calculated the defendant's advisory guideline range at life imprisonment, but because the statutory maximum for the defendant's offenses is 200 years' incarceration, the effective guideline recommendation is a sentence of 200 years. *See* PSR ¶ 41-104, 151-52. The defendant's final adjusted offense level is 50, which is 7 levels above the maximum 43, which calls for life imprisonment. Zweitzig agreed with the Probation Office's calculations. App. 92. The details of the calculation are as follows:

| | | |
|---|---|---|
| **Group One Counts One, Two and Three (19-0311)** | Base offense level, USSG § 2G2.1(a) | 32 |
| | Victim age 9, § 2G2.1(b)(1)(B) | +4 |
| | Crimes involved defendant's commission of a sexual act, § 2G2.1(b)(2)(A) | +2 |
| | Victim under the supervisory care of defendant at the time of the crimes, § 2G2.1(b)(5) | +2 |
| | **TOTAL Group One** | **40** |
| **Group Two Count Four (19-0311)** | Base offense level, USSG § 2G2.1(a) | 32 |
| | Victim age 9, § 2G2.1(b)(1)(B) | +4 |
| | Crimes involved defendant's commission of a sexual act, § 2G2.1(b)(2)(A) | +2 |
| | Victim under the supervisory care of defendant at the time of the crimes, § 2G2.1(b)(5) | +2 |
| | **TOTAL Group Two** | **40** |
| **Group Three Count Five (19-0311)** | Base offense level, USSG § 2G2.1(a) | 32 |
| | Victim age 10, § 2G2.1(b)(1)(B) | +4 |
| | Crimes involved defendant's commission of a sexual act, § 2G2.1(b)(2)(A) | +2 |
| | Victim under the supervisory care of defendant at the time of the crimes, § 2G2.1(b)(5) | +2 |

| | | |
|---|---|---|
| | **TOTAL Group Three** | **40** |
| **Group Four Count Six (19-0311)** | Base Offense Level, USSG § 2G2.2 | 18 |
| | Material involved victim under the age of 12 years, § 2G2.2(b)(2) | +2 |
| | Material depicted sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4) | +4 |
| | Defendant engaged in a pattern of sexual abuse or exploitation of a minor, § 2G2.2(b)(5) | +5 |
| | Use of a computer, § 2G2.2(b)(6) | +2 |
| | Defendant possessed more than 600 images, § 2G2.2(b)(7)(D) | +5 |
| | **TOTAL Group Four** | **36** |
| **Group Five Count One (20-0153)** | Base offense level, USSG § 2G2.1(a) | 32 |
| | Victim age 6 months old, § 2G2.1(b)(1)(B) | +4 |
| | Crimes involved defendant's commission of a sexual act, § 2G2.1(b)(2)(A) | +2 |
| | The offense involved material that portrays an infant or toddler, USSG § 2G2.1(b)(4)(B) | +4 |
| | Victim under the supervisory care of defendant at the time of the crimes, § 2G2.1(b)(5) | +2 |
| | **TOTAL Group Five** | **44** |

| | Highest Offense Level | 44 |
|---|---|---|
| | Multicount Adjustment, § 3D1.4 | +4 |
| | Pattern of Activity of Prohibited Sexual Conduct, § 4B1.5(b)(1) | +5 |
| | Deduction for Timely Acceptance of Responsibility | -3 |
| | **FINAL ADJUSTED OFFENSE LEVEL** | **50=43** |
| | CRIMINAL HISTORY I | |
| | **FINAL GUIDELINE RANGE** | **LIFE** |

As detailed in his interview in preparation for the Presentence

Report, Zweitzig minimized his criminal behavior by stating the following:

> "Children are taught to be ashamed of their bodies," [Zweitzig] said.
> "I taught [Minor #1] that, in the house, there was nothing wrong with
> nudity. I didn't want [Minor #1] to be ashamed of nudity. I wanted
> [Minor #1] to be able to come to me. From first grade I created a
> mantra with [Minor #1]:  You can tell me anything, you can ask me
> any question, you can show me anything without having to be afraid,
> embarrassed, or ashamed. I promise I will be attentive to you,
> accepting of you, and honest with you. I was trying to be the person
> that [Minor #1] could be comfortable with and could come to." The
> defendant continued to attempt to explain his relationship with
> Minor #1. "Other than the way I treated [Minor #1], I never treated
> another child or woman that way," he said. "I really felt that I was
> trying to help [Minor #1]." The defendant made these remarks prior
> to the disclosure that he had also sexually abused . . . Minor #2.

PSR ¶ 40.

By his own account, Zweitzig was specifically and intimately aware of

the damage suffered by the child victims of sexual abuse. As he explained to

investigators, "My [adult family member] was sexually abused as a child. So I know from an adult perspective some aspects of that." PSR ¶ 26.

When interviewed by investigators in April 2018 about the allegations made by Minor #1, Zweitzig lied (again) and said they were untrue. But, he continued:

> Q.    While talking to [Minor #1] about puberty and changing did you ever talk about specific body parts, either [the child's] or yours?
>
> A.    … I never did anything that I thought would be harmful to [the child] because I know through past experience about the harm that can be done through childhood sexual abuse and how that affects adults with marriage. So I was very careful not to do anything that would be harmful.

*Id.*

In its sentencing memorandum, the government noted that the defendant's sentencing guideline range called for life imprisonment,  "and based on the egregious circumstances of the defendant's crimes . . . [sought] a sentence of incarceration commensurate with the gravity of his crimes against children," specifically recommending "the statutory maximum per count to run consecutively for a total sentence of 200 years' incarceration, lifetime supervised release, and mandatory restitution." App. 35.

The government also quoted at length from impact statements submitted by a number of Zweitzig's victims.

As the mother of Minor #1 expressed:

> [I]t is so devastating to think about the weight of this burden on my [child]. [My child] was such a beautiful, bright, joyful little [child] with the most pleasant disposition. But [my child] was forced to carry around a horribly dark secret. No child should ever have to bear such a burden. Because of [Zweitzig's] perverse and criminal actions, [my child] learned about deception at a young age from a man who stood at a pulpit every Sunday preaching the word of God. While he talked to the congregation about how they should be living, he spent his private time getting sexual satisfaction from abusing my children. He called his time with [Minor #1] "their talks," a phrase that still haunts [my child] today. It is still difficult for me to comprehend the massive confusion his actions caused [my child]. It has affected [my child's] view of God, . . . of men, and relationships.

App. 51-52.

The government also submitted letters from some of the victims depicted in Zweitzig's massive collection of child pornography. Excerpts of the letters from these victims and their family members depicted the extent and significance of the harm and abuse inflicted upon these small children, all for the sexually deviant "pleasure" of people like Zweitzig. The excerpts included:

> I am writing to let you know that I am still having emotional and psychological problems due to knowing that images of me being abused as a child are circulated freely on the internet . . .

> I have recently gotten married and with this change to a new stage in my life[,] I have found that I have a new set of emotional challenges. I also have a step daughter [sic] who is just two years old. I see myself in her in so many ways[,] and this triggers concerns I have about keeping her safe given the amount of people who are downloading images of me. Because of this[,] I know that the world is not a safe

place for children. Knowing that there are so many out there who have taken pleasure in my pain has also interfered with my intimacy with my husband . . . Even though I know this and can see it coming[, i]t is very hard to bear. Counseling is a rock for me and helps me hang on to what stability that I can.

App. 54-55.

On September 17, 2020, the defendant was sentenced. At the sentencing hearing, Zweitzig's counsel presented argument, asking for a downward variance below the guideline range based on Zweitzig's age (72 years old) and his life expectancy. App. 66, 93-96.

Zweitzig's counsel first noted that even the 15-year mandatory minimum sentence was likely a life sentence. App. 95. She opined that were he to serve the mandatory minimum, he would "likely be physically incapacitated" at the end of the term of incarceration. *Id.* Under those circumstances, she argued that the mandatory minimum sentence would suffice because "it is unlikely that he will make it to his release." *Id.* Counsel also argued that general deterrence could not be satisfied and should not be considered because "there is just really no evidence that regardless of the sentence that your honor imposes in this case, that that would affect some other individual's likelihood of committing the same or similar offense[s]." *Id.* According to counsel, "we are in a situation where the guidelines call for

life. Your honor can't impose exactly that, but you can effectively because of the statutory maximum." *Id.*

She then argued that Zweitzig merited the mandatory minimum sentence because he "took responsibility from the very beginning, as early as he possibly could." *Id.* She argued that, if imposed, the statutory maximum would represent an unwarranted sentencing disparity. *Id.* For all of these reasons, Zweitzig's counsel asked the district court to grant a downward variance from the guidelines arguing that the "mandatory minimum in this case is what makes the most sense, because I think it is going to have the same effect anyway." App. 101.

Zweitzig then exercised his right to allocute, stating that he had "sinned" against Minor #1, his wife, his family, and his parishioners (he did not mention the children depicted in his pornographic collection). App. 101-02. He claimed that, "If I could go back and change any of my behavior, I surely would, but I can't." App. 102. According to Zweitzig, "[A]ll I can do is beg the court for mercy." *Id.*

The government then presented the testimony of Zweitzig's adult daughter, his daughter-in-law (Minor #1's mother), Minor #1, and an attorney for one of the victims depicted in Zweitzig's collection.

Zweitzig's daughter described as a child being made to watch pornography with her father, and receiving inappropriate "massages" at his hands. App. 105-106. His daughter-in-law described how the defendant held himself out as the "Number One Pop Pop" while secretly abusing his grandchildren. App. 107.

Minor #1 told the district court that:

> I have been waiting for this day since April 2018 when the raid happened. Now that we are finally here, it is hard to know exactly how to feel. I have endured years of pain, loss and betrayal because of what this man did to me. . . . I lost my innocence. I lost my shot at a normal childhood. Although the situation was full of loss, I found a lot to gain. From learning what it means to be strong and learning how to stand up for myself, this situation created the person I am today. For a long time I lived in fear and held large amounts of anger and hatred because of what happened. The abuse caused me to believe that I was nothing but an object to take advantage of. The abuse caused me to feel unworthy of love, and like I was worth nothing. He justified this as a way of showing love. This is not love. This led me to believe love was very different than it actually is. When you are little, you are taught that those in your family are the ones you can trust and love you the most. I was young and very impressionable. In fact, at the time this began, my little brain didn't even know what sex was. It should have stayed pure and innocent like that for a very long time, but this man ruined any chance of that. He took away my innocence.

App. 109-10.

Lastly, on behalf of her client whose images were found in Zwetizig's collection, the attorney advised the court:

> When our client was just 17 years old, she found out that sexually explicit images of her were being trafficked. The police called her down to the police station, showed her the photos, and told her that

they had just arrested an individual in possession of them. They asked her to flip through the photos to confirm her identity while she stood in front of her parents. Shortly thereafter, the news of our client's nude photographs spread throughout the community and high school, and our client was so traumatized that she was sent to the hospital and put on suicide watch. Ever since then, she has been devastated by the knowledge that her prepubescent images are being possessed and viewed by strangers [like Zweitzig].

App. 114.

The government then presented argument, asking the court to impose "the functional equivalent of a life sentence which is recommended by the guidelines." App. 121. As the government argued "there actually is no senior citizen discount for child exploitation. He does not get a lower sentence because he decided to commit the offenses, or more appropriately, get caught for the offenses, when he is in his 70s as opposed to his 20s or his 30s or his 40s." App. 117. The government then reminded the district court of how Zweitzig had manipulated Minor #1 in particular, applying psychological coercion in order to obtain his sexual gratification from a child. App. 119.

Having heard the arguments of counsel and Zweitzig's allocution, the court stated that it adopted, without objection, the PSR's calculation of the guideline range and noted the statutory maximum sentence was "2400 months' incarceration or 200 years." App. 91-92.

The court then gave a lengthy statement of its consideration of all of the evidence and arguments before it, and the reasons for the sentence it was about to impose:

> Mr. Zweitzig, I told you that after we had heard from you, your attorney, and the government and the government's witnesses, I would apply the [Section] 3553 factors to the facts in this case, and that is what I am going to do.
>
> Turning to the first factor that the sentence must reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. In this case, you sexually abused your [family members]. What is more, you photographed and taped the sexual abuse. You had spent time grooming [Minor #1], telling [Minor #1] what to do to him, and instructing [Minor #1] not to tell. Videotaping yourself as you went along and keeping a detailed journal of your activities, part of which after the family moved from Pennsylvania to Colorado, you mailed to [Minor #1]. When [Minor #1's] brother was just six months old, you videotaped yourself inserting a penis into the baby's mouth, and encouraged him to suck on it.
>
> When police raided your home, they found in addition to multiple images of your [family members], over 10,000 images, pictures and videos of child pornography. The images showed underage children in sexual acts with other children, with adults, and with animals. The pictures of [Minor #1] showed her genitals. The video showed [Minor #1's] naked genitals exposed and obeying your instructions to manually stimulate your penis.
>
> I turn now to the factor that the sentence must afford adequate deterrence to criminals. I must look at the deterrence factor both specifically and generally. Specifically, although you are a first-time offender, there is no indication that your arrest and indictment would stop your heinous behavior. After you were confronted by local police about the abuse of [Minor #1], you continued to collect child pornography. You denied what you had done. Nevertheless, you

transferred more than 7,500 images after [Minor #1] first reported the abuse.

And with respect to general deterrence, your attorney has suggested that given your age and the viewpoint that a long sentence would not actually deter people from doing what you have done. Unfortunately, young as well as old people commit sexual crimes against children. And the sentence that I impose here must reflect that although you may not survive – you will not survive your time in prison, everyone should understand that if they engage in these kind of activities, whatever their age, however young they are, they risk spending their life and dying in prison.

I turn to the factor to protect the public from further crimes of the defendant. I find that there is obviously a need to protect the public from your further crimes. I look at the need to provide you with education, training and medical care. I note that you are a highly educated man. You have advanced degrees. You have read the bible twice, I understand. Several times. You do have some physical and mental health issues, you have skin cancer, depression, high blood pressure, high cholesterol, and you have previously been diagnosed with coronary artery disease.

I talked about the sentencing Guidelines range, and obviously that will play into my sentence. There have been no specific policy statements that have been identified by the parties here.

I look at the nature and circumstances of the offense and the history and characteristics of the defendant. And here, here, the defendant is a highly educated man, a pastor, a man of god, the pater familias of his family, a leader in his community. And those facts make the crime particularly shocking, the crimes particularly shocking. The impact that you had on your [young family members] is unfathomable. [Minor #1], your very, very brave [young person] described in the submissions to me of being ashamed, feeling in a deep depression, turning to a bad crowd and drugs to ease [Minor #1's] psychological pain. [Minor #1] described panic attacks, [Minor #1] questioned her self-worth. [Minor #1] wondered whether [Minor #1] was worthy of love or even worthy of living. The damage suffered is similarly described by the children who, although they did not know you

personally, fortunately, have been victimized by what you have done. They too describe the fear, the shame, the sense of degradation. They also describe the powerlessness they feel because the images of them being sexually abused remain on the internet free to be accessed by others like the defendant.

Although the defendant asks for mercy because of his age, and what he says is an otherwise unblemished life, his son, the father of his grandchildren, describes the terrible pain defendant has inflicted and begs the court to understand that the man has poisoned his family and deserves no mercy. And his wife describes her father-in-law as having a level of depravity beyond anything she can fathom. The children whose life [sic] he has so horribly tainted must be able to reach solace in the fact that society has utterly condemned your actions. And for all time, there will be a cry to heaven that this man is a sexual abuser. This man is a child pornographer. This man is a criminal.

And as we are reciting the bible, I will cite to you Revelation 20:1 through 15. I assume you know the passage that I am referring to. ["]And the devil, who had deceived them, was thrown into the lake of fire and sulfur, where the beast and the false prophet were, and they will be tormented day and night for ever and ever.["]

I look at the kinds of sentences available. In this case, the maximum incarceration is 2,400 months. With respect to supervised release, it is five years to life, and a fine to be imposed is $50,000 to $500,000. And there is a special assessment of $100 per charge.

I look to the need to avoid unnecessary sentencing disparities, and obviously I have my guidelines range that I can look to in order to determine that. And I look to the need to provide restitution to the victims.

App. 123-27.

The court then sentenced Zweitzig on Criminal No. 19-311 to a term of

360 months' incarceration on Counts One through Five and 240 months'

incarceration on Count Six, all to be served consecutively, and to an additional consecutive term of 360 months' incarceration on Count One of Criminal No. 20-153, for a total term of 2,400 months' incarceration, which was consistent with the life term recommended by the Guidelines calculated by the Probation Office. App. 127-28. Additionally, the defendant was placed on lifetime supervised release and directed to pay $41,992.60 in restitution. App. 128-31.

## STATEMENT OF RELATED CASES

Defendant Zweitzig was charged with state offenses related to sexual abuse of a minor and possession of child pornography predicated on some of the same or similar conduct underlying the federal prosecution on appeal here. *See* Commonwealth v. Jerry Zweitzig, No. CP-46-CR-2073-2019. On January 22, 2021, Zweitzig entered a plea of guilty to a single count of indecent assault, with no further penalty to be imposed. The remaining charges were nolle prossed.

## SUMMARY OF ARGUMENT

The district court's sentence was procedurally and substantively reasonable. Here, the sentencing guidelines called for life imprisonment. The district court extensively discussed the sentencing factors set forth in 18 U.S.C. § 3553(a) before imposing a within-guidelines sentence consistent with the advisory range of life imprisonment. The fact that the court weighed the mitigating sentencing considerations differently from Zweitzig did not render its sentence unreasonable. Accordingly, Zweitzig has failed to meet his burden of showing that no reasonable sentencing court would have imposed the same sentence for the reasons the district court provided.

## ARGUMENT

## THE SENTENCE IMPOSED BY THE DISTRICT COURT WAS PROCEDURALLY AND SUBSTANTIVELY REASONABLE

### Standard of Review

Appellant Jerry Zweitzig challenges the procedural reasonableness of the sentence, asserting that the district court did not give serious consideration to or sufficiently address his arguments in mitigation. He did not meaningfully make this objection after the court explained the sentence, and review of that issue is accordingly for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 255 (3d Cir. 2014) (en banc).

Zweitzig's claim of substantive reasonableness is reviewed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007). The Court will affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). The burden rests on the party challenging the sentence to show unreasonableness, and this Court affords due deference to the district court's judgment. *United States v. Cooper*, 437 F.3d 324, 330-32 (3d Cir. 2006).

## Discussion

Defendant/appellant Jerry Zweitzig argues that the district court failed to respond to his argument regarding an alleged "unwarranted disparity" resulting from the imposition of the statutory maximum sentence. Br. 16. He also complains that the court failed to "acknowledge or respond" to his argument that his age, when weighed against considerations of general and specific deterrence, protection of the public, and the parsimony provision, justified a lower sentence. *Id.* In his view, the court failed to give meaningful consideration to these arguments and thereby committed an abuse of discretion. Br. 17. These contentions are frivolous in light of the record of this case. The record plainly shows that the district court gave careful consideration to all of the Section 3553(a) factors before imposing a reasonable within-guidelines sentence.

### A.    The Sentence Was Procedurally Reasonable.

### 1.    The claim is reviewed for plain error.

Zweitzig asserts that he preserved an objection to the procedural reasonableness of the sentence, and that issue is therefore reviewed for abuse of discretion. Br. 16. That is wrong.

He asserts that his counsel properly made a procedural objection during the following exchange with the district court.

| | |
|---|---|
| Ms. Young: | Just for the record, your honor, I do have to make the objection under *Flores-Mejia* that your honor did not sufficiently consider my arguments earlier, for the record. |
| The Court: | Okay. In my discussion of the 3553(a) factors, I did include a discussion of your argument and I have denied the motion [for a downward variance]. |
| Ms. Young: | Okay. |

App. 134.

That was not an objection to anything in the district court's explanation, and does not suffice.

Since this Court's 2014 en banc decision in *Flores-Mejia*, defense counsel have often faced the burden of plain error review when presenting a new procedural challenge on appeal that was not timely advanced to the district court. Here, it appears that counsel, though not actually observing any shortcoming in the district court's copious explanation, endeavored to preserve the possibility to argue something else later, perhaps pursuant to an instruction she received in her office (as she said, "*I do have to make* the objection under *Flores-Mejia* that your honor did not sufficiently consider my arguments earlier, *for the record*" (emphasis added)). Then, when the court declared that it in fact addressed all of counsel's argument, counsel simply responded, "okay."

Rule 51(b) of the Federal Rules of Criminal Procedure states: "A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Obviously, a general objection is meaningless, as it does not inform the court in any way of what the purported error is and how it may be corrected. *See, e.g.*, *United States v. Astling*, 733 F.2d 1446, 1459 (11th Cir. 1984) ("The purpose of this rule is to assure that the trial judge makes an informed decision, and to allow the judge and opposing counsel to take whatever corrective action is needed."). Absent a particular objection, plain error review applies. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

The en banc Court's ruling in *Flores-Mejia* is faithful to these precepts, stating: "We now hold that in such a situation, when a party wishes to take an appeal based on a procedural error at sentencing—such as the court's failure to meaningfully consider that party's arguments or to explain one or more aspects of the sentence imposed—that party must object to the procedural error complained of after sentence is imposed in order to avoid plain error review on appeal." *Flores-Mejia*, 759 F.3d at 255.

The Court identified "compelling reasons" for this requirement: to "promote judicial efficiency" by "permit[ting] the quick resolution of such errors," "promoting better sentencing practices," and preventing "'sandbagging' of the court by a defendant who remains silent about his objection to the explanation of the sentence, only to belatedly raise the error on appeal if the case does not conclude in his favor." *Id.* at 257.

The Court concluded:

> Sentencing is a complex process, and a district judge at sentencing must meet numerous requirements. An objection at sentencing, even if sometimes time-consuming, serves the important purpose of reminding the judge of these requirements and allowing the judge to immediately remedy omissions or clarify and supplement inadequate explanations. . . . Our strong interest in judicial economy, heightened in these times of fiscal restraint and judicial budgetary concerns, weighs heavily in favor of a rule under which the defendant must contemporaneously object to concerns regarding the procedural reasonableness of a sentence.

*Id.* at 258. Plainly, the general declaration here ("I do have to make the objection under *Flores-Mejia* that your honor did not sufficiently consider my arguments earlier, for the record") does not satisfy Rule 51(b) or achieve the purposes for sentencing objections articulated by this Court. More particularly, the specific arguments now raised on appeal – that the court did not meaningfully consider or address the arguments about age or disparity – were not brought to the attention of a court that had just

addressed those very subjects. No objection was preserved, and review is for plain error.

### 2.   The district court did not err.

In this matter, the district court did not commit plain error. In fact, it did not commit any procedural error at all.

The claim of procedural error is untenable. The Supreme Court has granted wide deference to sentencing courts, finding that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356 (2007). In *Rita*, the Supreme Court determined that a district court judge's terse sentencing explanation sufficed. *Id*. at 358-59.

In *Rita*, the defendant sought a reduction below the 33-to-41 month advisory guideline range on the basis of three factors: his health, fear of retaliation in prison, and his military record. In response, the court simply said that the guideline range was "appropriate," and that a sentence outside the guideline range would be "inappropriate." It never commented on the specific grounds for leniency advanced by the defendant. The Supreme Court held: "given the straightforward, conceptually simple arguments

before the judge, the judge's statement of reasons here, though brief, was legally sufficient." *Id.* at 356. The Court continued:

> We acknowledge that the judge might have said more. He might have added explicitly that he had heard and considered the evidence and argument; that (as no one before him denied) he thought the Commission in the Guidelines had determined a sentence that was proper in the mine run of roughly similar perjury cases; and that he found that Rita's personal circumstances here were simply not different enough to warrant a different sentence. But context and the record make clear that this, or similar, reasoning underlies the judge's conclusion. Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.

*Id.* at 358-59.

Here, the record clearly shows that the district court not only met, but far exceeded, *Rita*'s demands. First, after having heard from the defendant, his attorney, and the government, the district court reminded Zweitzig that it "would apply the 3553(a) factors to the facts in this case, and that's what I am going to do." App. 123. The court then discussed at length Zweitzig's history and characteristics, noting that he sexually abused his own family members. *Id.* The district court noted that Zweitzig "spent time grooming [Minor #1], telling her what to do to him, and instructing her not to tell." *Id.* The district court specifically considered that when Minor #2 was just *six months old*, Zweitzig videotaped himself inserting his "penis into the baby's mouth, and encouraged him to suck on it." *Id.*

Moreover, the district court explicitly considered and rejected Zweitzig's argument that his age was somehow a mitigating factor. The court also concluded that absent lengthy incarceration, Zweitzig himself could not be deterred from future crimes. The court stated:

> I must look at the deterrence factor both specifically and generally. Specifically, although you are a first-time offender, there is no indication that your arrest and indictment would stop your heinous behavior. After you were confronted by local police about the abuse of [Minor #1], you continued to collect child pornography. You denied what you had done. Nevertheless, you transferred more than 7,500 images after [Minor #1] first reported the abuse.
>
> And with respect to general deterrence, your attorney has suggested that given your age and the viewpoint that a long sentence would not actually deter people from doing what you have done. Unfortunately, young as well as old people commit sexual crimes against children. And the sentence that I impose here must reflect that although you may not survive – you will not survive your time in prison, everyone should understand that if they engage in these kind of activities, whatever their age, however young they are, they risk spending their life and dying in prison.

App. 124-25.

Next, the district court specifically determined to avoid any unwarranted disparities by relying upon the applicable sentencing guidelines which called for life imprisonment. As the district court explained to Zweitzig, "I look to the need to avoid unnecessary sentencing disparities, and obviously I have my guidelines range that I can look to in order to determine that." App. 127. The district court then imposed the

functional equivalent of a life sentence as recommended by the guidelines. Even his counsel agreed that "the guidelines call for life. Your honor can't impose exactly that, but you can effectively because of the statutory maximum." App. 95.

Zweitzig states that the court was required to further address a chart he provided that listed the sentences in 30 child exploitation cases, in which the highest term imposed was 100 years. It is not clear how he believes this helps him, given that a sentence of 100 years in this case would surely be a life sentence as well. And while he states that the two cases on his chart with the highest terms (60 years and 100 years) were "cases involving rape of children," Br. 10, that describes this case as well, where the defendant orally raped an infant.

In any event, a sentencing court can likely never impose an unduly disparate sentence by following the recommendation of the Guidelines, which remains the strongest method for avoiding inconsistent sentencing. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016) ("the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar."). Zweitzig's chart does not overcome that, as it did not present all of the particular circumstances that informed the determination in all of those cases. "When a defendant seeks to argue

disparate sentencing, he bears the 'burden of demonstrating similarity by showing that other defendants' circumstances exactly paralleled his, and a court should not consider sentences imposed on defendants in other cases in the absence of such a showing by a party.'" *United States v. Lacerda*, 958 F.3d 196, 215 (3d Cir. 2020), quoting *United States v. Iglesias*, 535 F.3d 150, 161 n.7 (3d Cir. 2008) (citing United States v. Vargas, 477 F.3d 94, 100 (3d Cir. 2007)) (internal brackets and quotations omitted). Zweitzig did not meet that burden here with a selective and very limited chart, and thus the court was not required to consider it. Indeed, it takes little time at all to identify numerous cases, starting just with appellate decisions, in which courts have imposed life or life-equivalent sentences for child abuse as heinous as that committed by Zweitzig; a small sampling appears in the margin.[4]

---

[4] *See, e.g., United States v. Zhinin*, 815 F. App'x 638, 642 (3d Cir. 2020) (not precedential) (affirming as reasonable a life sentence for aggravated sexual assault on two occasions of an 11-year-old girl); *United States v. Stull*, 760 F. App'x 109 (3d Cir. 2019) (not precedential) (338 years' imprisonment for producing, distributing, and possessing child pornography); *United States v. Mazer*, 604 F. App'x 126 (3d Cir. 2015) (not precedential) (60 years' imprisonment for two counts of production of child pornography); *United States v. Walpole*, 543 F. App'x 224 (3d Cir. 2013) (not precedential) (50 years' imprisonment for sexual exploitation of a child and receipt and possession of child pornography); *United States v. Pavulak*, 700 F.3d 651 (3d Cir. 2012) (life imprisonment for soliciting woman to provide minor child for sexual contact); *United States v. Davenport*, 910 F.3d 1076 (8th Cir. 2018) (70 years' imprisonment for

The court specifically stated that it had considered every issue that Zweitzig or his counsel had raised, announcing, "In my discussion of the 3553(a) factors, I did include a discussion of your [defense] argument and I have denied the motion [for a downward variance]." App. 134.

---

sexual exploitation of a child and production of child pornography); *United States v. Arsenault*, 833 F.3d 24 (1st Cir. 2016) (65 years' imprisonment for sexually exploiting three minors, and transporting, receiving, and possessing child pornography); *United States v. Resnick*, 823 F.3d 888 (7th Cir. 2016) (life imprisonment for aggravated sexual abuse of a minor and interstate transportation of child pornography); *Sealed Appellee v. Sealed Appellant*, 825 F.3d 247 (5th Cir 2016) (life imprisonment for transporting a minor under the age of 12 years across state lines and engaging in a sexual activity with her); *United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013) (life imprisonment for crossing state lines to engage in sexual conduct with minors under age 12); *United States v. Jansen*, 431 F. App'x 51 (2d Cir. 2011) (not precedential) (life imprisonment for conspiracy to transport minors in interstate commerce with intent to engage in sexual activity and aiding and abetting); *United States v. Jass*, 331 F. App'x 850 (2d Cir. 2009) (not precedential) (115 years' imprisonment for transporting minor across state lines for purpose of engaging in illegal sexual activity and production of child pornography); *United States v. Carey*, 589 F.3d 187 (5th Cir. 2009) (life imprisonment for aggravated sexual abuse of a minor younger than the age of 12); *United States v. Cerno*, 529 F.3d 926 (10th Cir. 2008) (life imprisonment for aggravated sexual abuse of a child); *United States v. Puente*, 267 F. App'x 863 (11th Cir. 2008) (not precedential) (life imprisonment for aggravated sexual abuse of a child); *United States v. Hood*, 143 F. App'x 94 (10th Cir. 2005) (not precedential) (life imprisonment for kidnaping and aggravated sexual abuse of a child); *United States v. Brown*, 330 F.3d 1073 (8th Cir. 2003) (life imprisonment for kidnaping and aggravated sexual abuse of a child); *United States v. Scott*, 985 F.2d 576 (9th Cir. 1993) (unpublished disposition) (life imprisonment for aggravated sexual abuse of a child under the age of 12).

In short, the court did not commit procedural error, let alone plain error. And to succeed on a claim of plain error, Zweitzig has to show, in part, that the error affected substantial rights, that is, the error affected the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997). Here, he cannot conceivably show that if the district court had said more than the exhaustive statements it made that the sentence would have been different.

## B.   The Sentence Was Substantively Reasonable.

Next, Zweitzig rehashes his arguments regarding procedural reasonableness, and claims that the court's sentence was substantively unreasonable just because the court did not give the various factors the *weight* that Zweitzig would give them. But that does not make the court's sentence unreasonable. *See United States v. Lessner*, 498 F.3d 185, 204-05 (3d Cir. 2007) (holding that the district court's decision "not to give such mitigating factors the weight that [the defendant] contends they deserve does not render her sentence unreasonable"); *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007) (same). Clearly, the court considered everything that was put forth, and found persuasive that the functional equivalent of a guideline sentence of a life term was required.

> I look at the nature and circumstances of the offense and the history and characteristics of the defendant. And here, here, the defendant is

a highly educated man, a pastor, a man of god, the pater familias of his family, a leader in his community. And those facts make the crime particularly shocking, the crimes particularly shocking. The impact that you had on your [family members] is unfathomable. [Minor #1], your very, very brave [person] described in the submissions to me of being ashamed, feeling in a deep depression, turning to a bad crowd and drugs to ease her psychological pain. [Minor #1]described panic attacks, she questioned her self-worth. [Minor #1] wondered whether [Minor #1] was worthy of love or even worthy of living.

. . .

Although the defendant asks for mercy because of his age, and what he says is an otherwise unblemished life, his son, the father of his grandchildren, describes the terrible pain defendant has inflicted and begs the court to understand that the man has poisoned his family and deserves no mercy. And his wife describes her father-in-law as having a level of depravity beyond anything she can fathom.

App. 125-26.

Child sexual exploitation crimes are undisputedly grave offenses. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the

Sentencing Guidelines were first promulgated. *See* S. Rep. No. 108-2 (2003).

Here, the district court noted that in addition to his abuse of Minor #1 and Minor #2, defendant Zweitzig was also well immersed in the online world of child pornography, and that he collected and preserved enormous amounts of child pornography for years.

> The damage suffered [by Minor #1 and the family] is similarly described by the children who, although they did not know you personally, fortunately, have been victimized by what you have done. They too describe the fear, the shame, the sense of degradation. They also describe the powerlessness they feel because the images of them being sexually abused remain on the internet free to be accessed by others like the defendant.

App. 126.

And, his collection included disturbing images of prepubescent children engaged in sex acts  with other children, adults, and animals. App. 52-53, 123-24; PSR ¶ 13. These disturbing and demented images and videos were used for this defendant's sexual gratification, and this defendant spent countless hours on the computer searching for and downloading child pornography. Defendant Zweitzig's part in the continued victimization of these children is consequential and demanded punishment and accountability.

In *United States v. MacEwan*, 445 F.3d 237 (3d Cir. 2006), the Third Circuit upheld the defendant's sentence for distributing and possessing child pornography based, in large part, on the extreme harm to the children who are victims of sexual abuse:

> In evaluating the magnitude of the harm caused by child pornography, we defer to the findings made by Congress. The congressional findings underlying § 2251 repeatedly stress that child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved." Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. 3009, 3009–26 (1996) (codified as amended at 18 U.S.C. § 2251). Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." § 121, 110 Stat. at 3009–27. Furthermore, "it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials." *Id.*; *see also New York v. Ferber*, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.").

*United States v. MacEwan*, 445 F.3d at 249-50. Defendant Zweitzig, and others like him who share in the world of child pornography, perpetuate the harm to the victims depicted in these images by creating demand and fueling this market, thereby leading to further production of images. The

children are victimized every time the images are downloaded, purchased, or viewed by another person. Given the scope of the Internet, their exploitation is ongoing and relentless .

Here, the district court can hardly have imposed an unreasonable sentence because it declined to manipulate its sentence so as to mitigate the Congressionally intended consequences of the offense of conviction.

Finally, Zweitzig contends that the court "focused only on the seriousness of the offense and imposition of punishment," and that its "explanation and sentence . . . do not demonstrate appropriate and judicious consideration of the relevant factors." Br. 26. But this is entirely misleading, because the court already had discussed all the sentencing factors at length, as set forth above.

Zweitzig asserts, "There are simply no circumstances under which 2,400 months of incarceration of a 72 year-old, first time offender, is sufficient but not greater than necessary to prevent reoffending, protect the public, protect uniformity in sentencing, provide just punishment or deter others from offending." Br. 25. That is baseless. The Sentencing Guidelines recommend this sentence, and as explained earlier, similar sentences are routinely imposed in unfortunately similar cases. Zweitzig, in his senior years, repeatedly sexually abused minor children in his own family who

were entrusted to his care. This Court may presume that a sentence within the guideline range is reasonable. *Rita*, 551 U.S. at 347; *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("his sentence was within the applicable Sentencing Guidelines range and thus is presumptively reasonable."); *United States v. Lacerda*, 958 F.3d 196, 215 (3d Cir. 2020). And even without that presumption, it is impossible to quarrel with the sentencing court's decision here.

There can be only one reason that the defense is instead advocating a term of 180 months or some other sentence considerably shorter than the guideline recommendation: because they believe Zweitzig might survive it, and thus have remaining time at liberty. Their protestations regarding his statistical life expectancy of a few years ring hollow; if they believed those statistics would certainly prove accurate with respect to him, there would be no reason for this appeal. What the defense seeks instead is a short sentence of less than life imprisonment, that is, less than the 200-year term that the district court imposed upon agreeing with the guideline recommendation. That effort fails; it requires a conclusion that a life term is unreasonable in this case, which is an impossible proposition. The court acted within its wide discretion in determining that the guideline sentence was warranted here to sanction Zweitzig, to incapacitate him, to support his

victims, and to send an unmistakable message to the community. The sentence was unquestionably reasonable and should be affirmed.

# CONCLUSION

For the reasons stated above, the government respectfully requests that the judgment of the district court be affirmed.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126


*/s Eric L. Gibson*
ERIC L. GIBSON
Assistant United States Attorney
Pa. Bar No. 76702


United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8506

# CERTIFICATION

1. The undersigned certifies that this brief contains 10,672 words, exclusive of the table of contents, table of authorities, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

2. I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.

*/s Eric L. Gibson*
ERIC L. GIBSON
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this brief has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Christy Martin, Esq.
Assistant Federal Defender


*/s Eric L. Gibson*
ERIC L. GIBSON
Assistant United States Attorney


DATED:  March 1, 2021.